**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA DEL CARMEN ROMERO AVILA, | ) NO. 5:26-cv-02701-KS |
| | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| WARDEN, ADELANTO ICE PROCESSING CENTER et al., | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by Petitioner Maria Del Carmen Romero Avila ("Petitioner") on May 19, 2026. (Dkt. No. 1.) For the following reasons, the Petition is **GRANTED**.

**BACKGROUND**

Petitioner is a native of Mexico who entered the United States on or about February 8, 2023 at or near Nogales, Arizona. (Dkt. No. 1 ¶ 34; Dkt. No. 7-1 at 5.) Respondents provide that Petitioner was apprehended by Border Patrol on or about the same day and issued a Form I-862 Notice to Appear ("NTA") charging Petitioner as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Dkt. No. 7-1 at 4, 5.) Petitioner was then released and enrolled in an Intensive Supervision Appearance Program

1

("ISAP") as part of Immigration and Customs Enforcement's ("ICE") Alternatives to Detention initiative. (*Id.* at 4.)

Petitioner subsequently filed applications for asylum, withholding of removal, and Convention Against Torture relief. On December 11, 2024, an immigration judge ("IJ") denied all of Petitioner's applications for relief. (Dkt. No. 7-1 at 5.) Petitioner timely appealed the IJ's order denying her relief to the Board of Immigration Appeals ("BIA") on January 7, 2025. Petitioner's appeal is currently pending. (Dkt. No. 1 at 24.)

During her period of supervision, Petitioner avers that she complied with all her ISAP conditions and was only late in submitting one phone check-in in April 2026 due to technical difficulties with the mobile application on her phone. (Dkt. No. 1 ¶ 35.) However, Respondents describe Petitioner's ISAP compliance differently, asserting that Petitioner violated the conditions of her release several times between July 2024 and April 2026:

- July 1, 2024: Missed Biometric Check-in
- July 1, 2024: No Location Received
- August 2, 2024: Missed Biometric Check-in
- September 2, 2024: Missed Biometric Check-in
- December 27, 2024: Missed Biometric Check-in
- March 21, 2025: Missed Biometric Check-in
- March 24, 2025: Biometric Match Failed
- May 9, 2025: Missed Biometric Check-in
- March 21, 2025: Missed Biometric Check-in
- August 8, 2025: Missed Biometric Check-in
- October 3, 2025: Missed Biometric Check-in
- January 26, 2026: Missed Biometric Check-in
- January 30, 2026: Missed Biometric Check-in

- February 9, 2026: Missed Biometric Check-in
- February 13, 2026: Missed Biometric Check-in
- February 23, 2026: Missed Biometric Check-in
- March 2, 2026: Missed Biometric Check-in
- March 27, 2026: Missed Biometric Check-in
- April 10, 2026: Missed Biometric Check-in

(Dkt. No. 7-1 at 5.)

After her late phone check-in in April 2026, Petitioner received a notification to appear for an in-person check-in on May 16, 2026 at the immigration office in Santa Ana, California. (Dkt. No. 1 ¶ 35.)  When Petitioner appeared for her in-person check-in, ICE Enforcement and Removal Operations ("ERO") officers arrested Petitioner.  (*Id.* ¶ 36.)  Respondents contend that ICE ERO officers served Petitioner with a Form I-200 Warrant for Arrest and a Form I-286 Notice of Custody Determination.  (Dkt. No. 7-1 at 6.)

On May 19, 2026, Petitioner filed the instant Petition seeking her immediate release. (Dkt. No. 1.)  On May 27, 2026, Respondents filed an Answer to the Petition along with a Form I-213 Record of Deportable/Inadmissible Alien.  (Dkt. Nos. 7, 7-1.)  Petitioner filed a Reply on May 29, 2026.  (Dkt. No. 8.)

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  District courts may grant a writ of habeas

corpus where a petitioner demonstrates they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to postremoval-period detention.").

## DISCUSSION

Petitioner asserts that her re-detention is in violation of her Fifth Amendment rights to substantive and procedural due process as well as the Administrative Procedure Act ("APA"), for being arbitrary, capricious, and an abuse of discretion. (Dkt. No. 1 ¶¶ 40-60.) As relief, Petitioner requests that the Court order her immediate release and enjoin Respondents from re-detaining her without a hearing. (*Id.* at 16.)

### I.   **Procedural Due Process**

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

4

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).  When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest.

With respect to the first *Mathews* factor, Petitioner gained a liberty interest when she was released on conditions.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").  Moreover, prior to her re-detention, Petitioner had developed strong community ties, was gainfully employed, and served as caretaker for her adolescent niece. (Dkt. No. 1 ¶¶ 38, 42.)  *See Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("[Peittioner] has been out of custody for nearly a year-and-a-half, and during that time, has lawfully worked fulltime, has become an active member of his community, and regularly volunteers at his temple.  His detention denies him that freedom."); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding that private interests can include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is undoubtedly high where, as here, Petitioner was re-detained without any procedural safeguards to determine whether her detention is justified.  Respondents assert that "Petitioner was

detained as a result of numerous release conditions" violations between July 2024 and April 2026. (Dkt. No. 7 at 3.) But "[e]ven if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ordoñez v. Bondi*, No. 2:25-cv-02356-JHC-TLF, 2025 U.S. Dist. LEXIS 269568, at *11 (W.D. Wash. Dec. 19, 2025); *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 U.S. Dist. LEXIS 73894, at *13 (W.D. Wash. Apr. 3, 2026) ("[T]his Court and others in this district and circuit have repeatedly found that a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing."); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 U.S. Dist. LEXIS 1006, at *12 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release, no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."). Moreover, given that ICE waited almost two years after the first alleged violation to take enforcement action, "it entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered 'impracticable[.]'" *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 U.S. Dist. LEXIS 69720, at *12 (W.D. Wash. Mar. 31, 2026) (quoting *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 U.S. Dist. LEXIS 168147, at *28 (E.D. Cal. Aug. 28, 2025)). Thus, the risk of erroneous deprivation is extraordinarily high in this scenario as "ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner [without] any process for Petitioner to challenge the exercise of that discretion." *Diaz v. Knight*, No. 2:26-cv-00247-RFB-DJA, 2026 U.S. Dist. LEXIS 29219, at *7 (D. Nev. Feb. 12, 2026).

Finally, as to the third *Mathews* factor, the Court finds "that the Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. "[A]lthough it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and [a] hearing on ATD violations before arresting and re-detaining [her], those costs are far outweighed by the risk of erroneous

deprivation of the liberty interest at issue." *Id.* ("That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner attended multiple immigration court hearings where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable."). Thus, the Government's interest in re-detaining Petitioner without a hearing is low. *See Doe*, 787 F. Supp. 3d at 1094 ("The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case.").

In sum, the *Mathews* factors show that Petitioner had a due process right to a pre-deprivation hearing before she was re-detained. Accordingly, the Court concludes that Petitioner's re-detention violates her constitutional right to due process and that the Petition must be granted.[1]

## II.    **Relief**

Having found that Petitioner was re-detained without adequate process, the Court must next determine the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) ("Declaratory and injunctive relief are proper habeas remedies.").

"Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is 'unlawful from its inception and typically requires

---

[1] Petitioner also asserts that her re-detention violates substantive due process and the APA. As these remaining claims are largely duplicative of Petitioner's procedural due process claim for which the Court has already granted relief, the Court need not address Petitioner's remaining claims.

immediate release.'" *Victoriano*, 2026 U.S. Dist. LEXIS 96596, at *22 (quoting ) Moreover, "[b]ecause the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before [her] unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 U.S. Dist. LEXIS 71703, at *11 (W.D. Wash. Apr. 1, 2026). Thus, as several courts have determined, "a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 U.S. Dist. LEXIS 133824, at *7 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Accordingly, the Court concludes that the appropriate remedy for Petitioner's unlawful re-detention without adequate process is her immediate release.

## ORDER

For the foregoing reasons, the Petition is **GRANTED**. **IT IS ORDERED** that Respondents ***shall immediately release*** Petitioner Maria Del Carmen Romero Avila (A-Number 246-624-110) from custody. Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate. Judgment will be entered accordingly.

DATED: July 29, 2026

_____
HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE